## IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

THRIVEST LEGAL FUNDING, LLC,

        *Plaintiff,*

    v.

DANIEL GILBERG,

        *Defendant.*

CIVIL ACTION
NO. 16-03931

---

**PAPPERT, J.**                                                      **April 3, 2017**

### MEMORANDUM

Thrivest Legal Funding is Philadelphia based litigation-finance company that offers cash advances to plaintiffs and plaintiffs' attorneys. In exchange for an up-front payment from Thrivest, attorneys agree to pay back a portion of the fees they earn when a particular case is resolved. Thrivest sued Daniel Gilberg, an attorney in New York City, for breach of contract after Gilberg allegedly failed to make required payments to Thrivest under the terms of five separate cash advance agreements ("the Agreements"). Gilberg now moves to dismiss the Complaint for lack of personal jurisdiction and improper venue. In the alternative, he seeks to transfer the case to the Southern District of New York. His motion is denied in all respects.

### I.

Gilberg is a personal injury attorney practicing in New York. (Compl. ¶ 2, ECF No. 1.) Gilberg and Thrivest's predecessor, a Pennsylvania limited liability corporation with offices in Philadelphia called LawSuit Funding Solutions, LLC,[1] entered into the first of the five Agreements in July 2015. (*Id.* at Ex. A.) Under the terms of that

---

[1] Thrivest is the successor to LawSuit Funding Solutions, LLC due to a name change. (Compl. ¶ 1.)

contract, Thrivest advanced Gilberg $20,000 and Gilberg agreed to pay Thrivest a portion of the fees he earned representing Lyudmila Gladkovister and Dorothy Villalba in two unrelated lawsuits. *See* (*id.* at Exs. A & B). Gilberg subsequently entered into three more Agreements with Thrivest: a September 29, 2015 contract for $20,000 for his representation of Villalba; an October 28, 2015 agreement for $20,000 tied to his representation of Minnie Parker; and a March 9, 2016 contract for $20,000 with respect to his representation of Marilyn Morson. (*Id.* at Exs. B, C & F.) Thrivest also contends that Gilberg is liable under a fifth contract between Thrivest and one of Gilberg's clients, Antar LeGendre, in which Thrivest advanced LeGendre $3,000 and LeGendre assigned Thrivest an interest in any settlement or favorable judgment. (*Id.* at ¶¶ 38–50); *see also* (*id.* at Ex. D & E).

During the parties' course of dealings, Gilberg never came to Pennsylvania, though he communicated with Thrivest on numerous occasions. While negotiating the Agreements, Gilberg sent at least eleven emails and one fax to Thrivest employees in Philadelphia. (Madiera Aff. ¶¶ 17(a)–(f); (h)–(m), ECF No. 7-2.) Gilberg also made between five and six telephone calls to Thrivest employees to secure each cash advance—a total of twenty-five to thirty calls. (*Id.* ¶ 18.)

Gilberg's communications with Thrivest in Pennsylvania continued throughout the performance and alleged breach of the Agreements. After Gilberg settled the Villalba case and failed to pay a portion of his fees to Thrivest, Gilberg had multiple communications with Thrivest personnel via text message and email in late March and early April 2016. (*Id.* ¶ 17(r)–(w)). According to Gilberg's own text messages, he also

attempted to send a check by regular mail to Thrivest in Pennsylvania. *See* (Compl., at Ex. 20).

Thrivest sued Gilberg on July 21, 2016. (ECF No. 1.) On October 17, 2016 Gilberg filed his motion to dismiss, (ECF No. 6), Thrivest filed its response on October 28, (ECF No. 7), and Gilberg filed a reply on November 14, (ECF No. 8). This case was initially assigned to Judge Dalzell and reassigned to this Court on November 28, 2016. (ECF No. 10.)

## II.

In reviewing a motion to dismiss for lack of personal jurisdiction under Federal Rule of Civil Procedure 12(b)(2), the Court "must accept all of the plaintiff's allegations as true and construe disputed facts in favor of the plaintiff." *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 368 (3d Cir. 2002) (citation omitted). A motion made pursuant to Rule 12(b)(2) "is inherently a matter which requires resolution of factual issues outside the pleadings," that is, "whether *in personam* jurisdiction actually lies." *Time Share Vacation Club v. Atl. Resorts, Ltd.*, 735 F.2d 61, 66 n.9 (3d Cir. 1984). Once the defense has been raised, "the plaintiff must satisfy its burden of proof in establishing jurisdictional facts through sworn affidavits or other competent evidence" and may not "rely on the bare pleadings alone." *Id.* (citing *Int'l Ass'n of Machinists & Aerospace Workers v. Nw. Airlines, Inc.*, 673 F.2d 700 (3d Cir. 1982)). The plaintiff must offer evidence that establishes with reasonable particularity the existence of sufficient contacts between the defendant and the forum state to support jurisdiction. *See Carteret Sav. Bank v. Shushan*, 954 F.2d 141, 146 (3d Cir. 1992); *see also Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Ass'n*, 819 F.2d 434, 437 (3d Cir. 1987).

Under Federal Rule of Civil Procedure 4(k), a district court typically exercises personal jurisdiction according to the law of the state where it sits. *See O'Connor v. Sandy Lane Hotel Co., Ltd.*, 496 F.3d 312, 316 (3d Cir. 2007). Pennsylvania's long-arm statute permits courts to exercise personal jurisdiction "to the fullest extent allowed under the Constitution of the United States and . . . based on the most minimum contact with this Commonwealth allowed under the Constitution of the United States." 42 Pa. C.S.A. § 5322(b). To exercise personal jurisdiction over Gilberg, the Court must therefore determine whether, under the Due Process Clause, Gilberg has "certain minimum contacts with . . . [Pennsylvania] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *O'Connor*, 496 F.3d at 316–17 (citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)).

There are two type of personal jurisdiction: general and specific. General jurisdiction is proper when a defendant's contacts with the forum state are "continuous and systematic," whether or not those contacts are related to the plaintiff's cause of action. *See Remick v. Manfredy*, 238 F.3d 248, 255 (3d Cir. 2001). Specific jurisdiction exists when the "non-resident defendant has 'purposefully directed' his activities at a resident of the forum and the injury arises from or is related to those activities." *Gen. Elec. Co. v. Deutz*, 270 F.3d 144, 150 (3d Cir. 2001) (citing *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985)). Thrivest does not argue that Pennsylvania has general jurisdiction over Gilberg. Gilberg contends that the Court lacks specific personal jurisdiction over him. (Def.'s Mot. ¶ 1, ECF No. 6.)

The specific jurisdiction inquiry has three parts. *See O'Connor*, 496 F.3d at 317. First, the plaintiff must show that the defendant "purposefully directed [its] activities

at the forum." *Burger King*, 471 U.S. at 472; *see also Marten v. Godwin*, 499 F.3d 290, 296 (3d Cir. 2007). Second, the litigation must "arise out of or relate to" at least one of those activities. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984); *see also Grimes v. Vitalink Commc'ns Corp.*, 17 F.3d 1553, 1559 (3d Cir. 1994). Third, if the prior two requirements are met, the Court may consider whether the exercise of jurisdiction otherwise "comport[s] with 'fair play and substantial justice.'" *Burger King*, 471 U.S. at 476 (quoting *Int'l Shoe*, 326 U.S. at 320).

## III.

Gilberg argues that he lacks minimum contacts with Pennsylvania. In an affidavit attached to his motion, Gilberg avers that he is domiciled in New York, owns no property in Pennsylvania and that the relevant contacts giving rise to the dispute in this case occurred in New York. *See* (Pl.'s Mot. to Dismiss, at 9–10, ECF No. 6.)

Specific jurisdiction does not require physical presence in the forum state during contract negotiations or performance. *Deutz AG*, 270 F.3d at 150. The Court must instead examine "whether the defendant's contacts with the forum were instrumental in either the formation of the contract or its breach." *Id.* (citing *Phillips Exeter Acad v. Howard Phillips Fund, Inc.*, 196 F.3d 284, 289 (1st Cir. 1999)). When a defendant reaches out beyond his own state to "create continuing relationships and obligations with citizens of another state," he is subject to the jurisdiction of that state. *Burger King*, 417 U.S. at 473. Contemporary business relationships are typically developed through electronic communication, *Deutz*, 270 F.3d at 150, and "[w]here these types of long-term relationships have been established, actual territorial presence becomes less determinative," *id.* (citing *Burger King* 417 U.S. at 476).

5

Gilberg purposefully directed his activities toward Pennsylvania with regard to each of the Agreements. In negotiating the two Villalba contracts, Gilberg sent four emails to Thrivest employees in Pennsylvania. (Madeira Aff. ¶¶ 17(a)–(c), (h).) Thrivest also provided an email—in addition to the five to six calls Thrivest claims he made—from Gilberg to secure the contract concerning the Parker litigation. To help his client Antar LeGendre secure the October 5, 2015 agreement, Gilberg sent three emails to Thrivest employees in Pennsylvania providing information on LeGendre's lawsuit. (*Id.* ¶¶ 17(d)–(f).) Finally, in negotiating the contract associated with the Morson litigation, Gilberg sent three emails, a fax and multiple text messages to Thrivest employees in Pennsylvania. (*Id.* ¶ 17(j)–(n).) In addition to these contacts, Gilberg called Thrivest employees in Pennsylvania five to six times while negotiating each contract. (*Id.* ¶ 18.) Moreover, Gilberg knew that Thrivest was in Pennsylvania: to satisfy his obligations on a prior contract unrelated to this case, he mailed at least one check to Thrivest's predecessor in Pennsylvania. *See* (Pl.'s Resp., Ex. 1, ECF No. 7-3); *see also* (Madeira Aff. ¶ 14).[2]

By entering into the Agreements, Gilberg established continuing obligations with citizens of the forum state. *See Burger King*, 471 U.S. at 475–76. Gilberg was obligated to repay Thrivest from settlement funds to cover the cash advances, costs and fees he received from Thrivest whenever he resolved the cases named in the contracts. *See* (Compl., at Exs. A–C, F). This obligation was ongoing and lasted as long as the referenced underlying litigation. Where a defendant has "availed himself of the privilege of conducting business" in the forum state in such a way, "[j]urisdiction may

---

[2]    Because this contract is unrelated to this case it is also unrelated to the minimum contacts analysis. The fact that Gilberg previously mailed a check to Thrivest in Pennsylvnia, however, shows that his contacts with a Pennsylvania party were knowing.

not be avoided merely because the defendant did not *physically* enter the forum State." *See Burger King*, 471 U.S. at 463.

Gilberg's contacts with Thrivest in Pennsylvania did not stop at the negotiation phase. Gilberg exchanged several more emails and text messages with Thrivest employees once Thrivest learned he settled the cases without remitting the funds owed under the Agreements. Throughout April and May 2015, Gilberg participated in at least five text-message exchanges, (Madeira Aff. ¶¶ 17(o), (q)–(r), (v)–(w)), and three email exchanges, (*id.* ¶¶ (s)–(u)), with Thrivest employees in Pennsylvania. In those communications Gilberg assured Thrivest he would honor the Agreements. According to his texts, he also sent a check via regular mail to Thrivest in Pennsylvania. (Compl., Ex. 20, ECF No. 7-22.)

Additionally, the Agreements each contained the following choice-of-law clause: "This Agreement shall be governed, interpreted, and enforced in accordance with the substantive and procedural laws and rules of the State of Pennsylvania." (Compl., at 15, 19, 23, 29, 36.) While a choice-of-law clause, without more, cannot vest a court with personal jurisdiction over a claim, such a clause should not "be ignored in considering whether a defendant has 'purposefully invoked the benefits and protections of a State's laws' for jurisdictional purposes." *Burger King*, 471 U.S. at 482. The choice-of-law clauses further indicate that Gilberg purposefully invoked the benefits and protections of Pennsylvania's laws in his dealings with Thrivest.

Gilberg repeatedly contacted Thrivest in Pennsylvania to negotiate the Agreements; he ultimately entered into the Agreements with the Pennsylvania company, and the contracts instructed that Pennsylvania law would apply to any

disputes.  Gilberg also created continuing obligations toward a Pennsylvania company: it was unclear when the cases named in the Agreements would be resolved, and Gilberg was bound under their terms to pay Thrivest a portion of his fee when he received it. These contacts enable the Court to exercise specific personal jurisdiction over Gilberg.

**B.**

Thrivest's claim "arise[s] out of or relate[s] to" Gilberg's contacts with Pennsylvania.  *See Helicopteros*, 466 U.S. at 414.  "In contract cases, courts should inquire whether the defendant's contacts with the forum were instrumental in either the formation of the contract or its breach."  *Deutz*, 270 F.3d at 150.  In the course of this inquiry, "the analysis should hew closely to the reciprocal principle upon which specific jurisdiction rests": the cost of enjoying the benefits of the forum.  *Id.* at 323 (citing *Burger King*, 471 U.S. at 475–76).

Gilberg's contacts with Pennsylvania—repeatedly contacting and negotiating with Thrivest there as well are receiving numerous cash advances from Philadelphia— give rise to Thrivest's breach of contract claims.  Gilberg contacted Thrivest multiple times in Pennsylvnia to secure cash advances from the company.  *See supra* Section III.A.  He ultimately entered into the Agreements with Thrivest to obtain those advances.  "It is enough that a meaningful link exists between a legal obligation that arose in the forum and the substance of the [plaintiff's] claims."  *O'Connor*, 496 F.3d at 342.  Thrivest's claims plainly "arise out of or relate to" Gilberg's contacts with Pennsylvania: his contacts with Thrivest were for the purpose of securing the Agreements Thrivest alleges he breached.

**C.**

Exercising personal jurisdiction over Gilberg will not violate traditional norms of fair play and substantial justice. "The existence of minimum contacts makes jurisdiction presumptively constitutional, and the defendant 'must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable.'" *O'Connor*, 496 F.3d at 324 (quoting *Burger King*, 471 U.S. at 477); *see also Pennzoil Prods. Co.,* 149 F.3d at 207 (noting that, where minimum contacts exist, jurisdiction will be unreasonable only in "rare cases"). "The burden on a defendant who wishes to show an absence of fairness or lack of substantial justice is heavy." *Grand Entm't Group, Ltd. v. Star Media Sales, Inc.,* 988 F.2d 476, 483 (3d Cir. 1993).

Several factors guide the jurisdictional reasonableness inquiry. They include (1) the burden on the defendant; (2) the forum state's interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining convenient and effective relief; and (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies. *O'Connor*, 496 F.3d at 324 (citing *Burger King*, 471 U.S. at 477 (internal quotations omitted)).

Litigating this case in the Eastern District of Pennsylvania will invariably require Gilberg to travel from New York to Philadelphia. Such travel does not, however, rise to the level of a constitutional violation. Rather, "it is only in highly unusual cases that inconvenience will rise to a level of constitutional concern." *In re DBSI, Inc.*, 467 B.R. 309, 315 (D. Del. 2012) (quoting *Peay v. BellSouth Med. Assistance Plan*, 205 F.3d 1206, 1212 (10th Cir. 2000)). "This is especially true 'in this age of instant communication and transportation, where the burdens of litigating in a distant

forum have lessened.'" *In re DBSI, Inc.*, 467 B.R. at 315. While Gilberg's travel may be a burden, it will not be a constitutional one. He has not claimed "exorbitant travel expenses" or the unavailability of evidence, for example. *See, e.g.*, *Pennzoil Prods.*, 149 F.3d at 208 (holding that the distance between the Western District of Pennsylvania and the Eastern District of Ohio cannot be, without more, unreasonably onerous as to do so would imply that any distance between districts is impermissible); *Chea v. Fette*, No. 02-8667, 2014 WL 220866, at *4 (E.D. Pa. Jan. 7, 2004) (holding that requiring a German corporate defendant with headquarters in Germany to litigate in Pennsylvania where minimum contacts were established would not violate traditional notions of fair play and substantive justice). Indeed it would be difficult for Gilberg to do so. The relevant courthouses are separated by roughly ninety-five miles—an approximately seventy-minute train ride.[3]

The other factors also support jurisdiction. For one, Pennsylvania has an interest in adjudicating this dispute: Thrivest is a Pennsylvania company with its headquarters and employees in the commonwealth, and Pennsylvania law will determine the interpretation of the Agreements. *See* (Compl., at 15, 19, 23, 29, 36); (Madeira Aff. ¶¶ 3, 16–17). Finally, nothing in the record suggests that the interstate judicial system's interest in the most efficient resolution of the dispute disfavors Pennsylvania's exercise of personal jurisdiction. This is not one of the rare cases in which minimum contacts exist but exercising personal jurisdiction will result in a violation of traditional notions of fair play and substantial justice. *See Pennzoil Prods,* 149 F.3d at 207.

---

[3]     The Court takes judicial notice that the driving distance  between the federal Courthouse in Philadelphia and the Southern District of New York courthouse in New York City is 93.1 miles per Google Maps.

**IV.**

Gilberg also moves to dismiss the complaint under Federal Rule of Civil Procedure 12(b)(3). He contends that the Eastern District of Pennsylvania is an improper venue under for three reasons: First, he notes that he is domiciled in New York and therefore subject to personal jurisdiction in New York. Second, he argues that the Agreements were negotiated and executed in New York. Finally, Gilberg claims that the Agreements lack a forum selection clause in which he consented to personal jurisdiction in Pennsylvania. (Def.'s Mot. ¶ 8.) None of these points render the Eastern District of Pennsylvania an improper forum.

Under 28 U.S.C. § 1391(b)(2), venue is proper in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated." 28 U.S.C. § 1391(b)(2). Because "a motion to dismiss for improper venue is not an attack on jurisdiction but only an affirmative dilatory defense," the burden of proving improper venue is on the moving party, *Myers v. Am. Dental Ass'n*, 695 F.2d 716, 724 (3d Cir. 1982), and the Court must view the facts in the light most favorable to the plaintiff, *Heft*, 355 F. Supp. 2d at 762. The venue analysis is separate and distinct from whether the Court has personal jurisdiction over the defendant, as the test under § 1391(b)(2) looks only to events or omissions that directly gave rise to the claim. *Cottman Transmission Systems, Inc. v. Martino*, 36 F.3d 291, 294 (3d Cir. 1994); *see also Bockman v. First Am. Mktg. Corp.*, 459 F. App'x 157, 161–62 (3d Cir. 2012) (noting that "for venue to be proper, significant events or omissions material to the plaintiff's claim must have occurred in the district in question," and that it "would be error . . . to treat

the venue statute's substantial part test as mirroring the minimum contacts test employed in personal jurisdiction inquiries" (citing *Gulf Ins. Co. v. Glasbrenner*, 417 F.3d 353, 357 (2d Cir. 2005))).

Gilberg has not met his burden of showing that venue is improper in the Eastern District of Pennsylvania. He first notes that his domicile is New York, which would make the Southern District of New York a proper venue under 28 U.S.C. § 1391(b)(1). That venue may lie elsewhere, however, does not undermine this district as a proper venue for the case. 14D CHARLES ALAN WRIGHT, & ARTHUR R. MILLER, FEDERAL PRACTICE AND PROCEDURE § 3806 (4th ed. 2017).

Gilberg next asserts that the Agreements were negotiated and executed in New York. (Def.'s Mot. ¶ 5.) Even if true, that is insufficient to meet his burden. In determining proper venue for a contractual dispute, the relevant considerations include where the contract was to be negotiated and executed, where the contract was to be performed, and where the alleged breach occurred. *Wall v. Corona Capital, LLC*, No. 16-1044, 2016 WL 6901333, at *4 (W.D. Pa. Nov. 22, 2016); *see also Cottman*, 36 F.3d at 295 (considering similar factors in determining proper venue for breach of contract case).

The Agreements were negotiated in both New York and Pennsylvania. "In the electronic age—where letters, faxes, and telephone calls are augmented by e-mails, instant messages, and tweets—it is increasingly likely that negotiation and execution of contracts take place in disparate locations." WRIGHT & MILLER § 3806. Gilberg made phone calls, sent emails, text messages and at least one fax from New York to Pennsylvania, while Thrivest sent emails and texts from Pennsylvania, and the

contract was signed by Thrivest in Pennsylvania and by Gilberg in New York.  *See*

*supra* Section III.A.  Gilberg contends that he signed the Agreements in the Southern

District of New York, (Gilberg Aff. ¶ 7), which was the last act required to make the

Agreements effective.[4]  Gilberg's alleged breach also occurred in the Southern District

of New York, where he failed to make the payments due.  *See Cottman*, 36 F.3d at 295

(holding, in the context of a venue analysis, that the place of breach is the state from

which the breaching party failed to make payment under the contract).

    While some relevant events took place in the Southern District of New York, a

substantial part of the events or omissions took place in the Eastern District of

Pennsylvania.  The parties can be said to have negotiated the Agreements here, the

entirety of Thrivest's obligations under the Agreements were performed in the Eastern

District of Pennsylvania, and Gilberg agreed to repay Thrivest in this district.  *See*

*supra* Section III.A; *see also Wall*, 2016 WL 6901333, at *4 (concluding that, although

the alleged breach of contract occurred in a different state, venue was proper based on a

substantial part of the events giving rise to the claim when the defendant

"communicated to the [plaintiffs'] financial advisor in [the forum], the [plaintiffs] paid

their consideration for the contract from [the forum], and Defendants agreed to send

payments to [the forum]"); *Anderson v. Tyson*, No. 94-0528, 1994 WL 237365, at *1

(E.D. Pa. June 1, 1994) (denying motion to dismiss under § 1391 where plaintiff worked

from its office in Philadelphia to perform the contract and defendant had continuing

---

[4]    Thrivest attached copies of the Agreements to its Complaint.  *See* (Compl., at 15, 19, 23, 29, 36).  Each of them includes the date of the agreement on the first page.  The signature block of each agreement includes an undated electronic signature from Thrivest Chief Financial Officer Mark Madeira and a dated signature from Gilberg.  The contracts therefore appear to be pre-filled by Thrivest and later signed by Gilberg, suggesting that the agreements were in fact executed in New York.

communications with plaintiff in Pennsylvania, despite the fact that the defendant breached the contract in Indiana).

Finally, Gilberg notes that the Agreements lack a forum selection clause.  While this fact bolsters Gilberg's argument that there are other appropriate venues for this case, it does not undermine the Eastern District of Pennsylvania as a proper venue.  The presence or absence of a forum selection clause is not dispositive—venue is governed by § 1391, not the parties' contract.  *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, ___ U.S. ___, 134 S. Ct. 568, 578 (2013).

## V.

Alternatively, Gilberg asks the Court to transfer the case to the Southern District of New York under 28 U.S.C. §§ 1406(a) or 1404.  By its own terms, § 1406 applies only to cases brought in the wrong venue.  Because the Court has already concluded that venue is proper in the Eastern District of Pennsylvania, *see supra* Part IV, § 1406 is inapplicable here, *see Atl. Marine*, 134 S. Ct at 573, ___ U.S. ___ (2013) ("Section 1406(a) and Rule 12(b)(3) allow dismissal only when venue is 'wrong' or 'improper.'"); *Ferratex*, 121 F. Supp. 3d at 436 ("A district court may only dismiss or transfer a case under § 1406(a) if it finds the original venue improper.").

Section 1404(a) permits a court to transfer a case to any other district "where it might have been brought" if the transfer is "for the convenience of parties and witnesses" and "in the interest of justice."  28 U.S.C. § 1404(a).  The party seeking transfer "bears the burden of proving that the transfer is proper and the Court has broad discretion in deciding whether to transfer an action."  *Saint-Gobain Calmar, Inc.*

*v. Nat'l Prods. Corp.*, 230 F. Supp. 2d 655, 658 (E.D. Pa. 2002) (citing *Plum Tree, Inc. v. Stockment*, 488 F.2d 754, 756 (3d Cir. 1973)).

Analysis of a motion to transfer venue pursuant to § 1404(a) has two components: First, both the original venue and the requested venue must be proper. *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 877–878 (3d Cir. 1995). Second, because the purpose of allowing § 1404(a) transfers is "to prevent the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense," *Pro Spice, Inc. v. Omni Trade Grp., Inc.*, 173 F. Supp. 2d 336, 339 (E.D. Pa. 2001) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964)), the Court is required to undertake a balancing test to decide whether the "interests of justice [would] be better served by a transfer to a different forum." *Jumara*, 55 F.3d at 879.

Venue would be proper in either the Eastern District of Pennsylvania or the Southern District of New York. *See* 28 U.S.C. § 1391(b)(1) (permitting a civil action to be brought in "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located"); *supra* Part IV.

To determine whether the convenience of the parties and the interest of justice favor transfer, the Court must balance various private and public interests. The private interests include: (1) the plaintiff's forum preference as manifested by its original choice; (2) the defendant's forum preference; (3) whether the claim arose elsewhere; (4) the convenience of the parties as indicated by their relative physical and financial condition; (5) the convenience of the witnesses; and (6) the location of books and records. *Jumara*, 55 F.3d at 879 (citation omitted). "The private-factors analysis

concentrates on the interests of the litigants and their witnesses to hold the trial in the forum more convenient for all of the involved parties." *In re Amkor Tech., Inc. Sec. Litig.*, No. 06-298, 2006 WL 3857488, at *2 (E.D. Pa. Dec. 28, 2006).

## A.

In considering the relevant private interests, "[the plaintiff's] choice of forum is entitled to great weight and is not to be disturbed unless the balance of convenience strongly favors the defendant['s] forum." *Blanning v. Tisch*, 378 F. Supp. 1058, 1060 (E.D. Pa. 1974) (citing *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 25 (3d Cir. 1970)). The defendant's forum preference, meanwhile, is "entitled to considerably less weight than Plaintiff's, as the purpose of a venue transfer is not to shift inconvenience from one party to another." *Family Fin. Ctrs. LLC v. Cox*, No. 14-5330, 2015 WL 790038, at *4 (E.D. Pa. Feb. 25, 2015) (quoting *EVCO Tech. Dev. Co. v. Precision Shooting Equip., Inc.*, 379 F. Supp. 2d 728, 730 (E.D. Pa. 2003)). Given the relative weight of these first two private interests, neither favors transfer.

The third private interest is where the claim arose. "When the chosen forum has little connection with the operative facts of the lawsuit, such that retaining the action conflicts with the interests in efficiency and convenience, other private interests are afforded less weight." *Cancer Genetics, Inc. v. Kreatech Biotechnology, B.V.*, No 07-0273, 2007 WL 4365328, at *5 (D.N.J. Dec. 11, 2007). The chosen venue's connection to the lawsuit is not so tenuous here. Thrivest is a Pennsylvania company, it was owed payment in Pennsylvania, and it sent communications from and received communications in Pennsylvania. The Agreements were executed, breached and were to be performed in part in the Southern District of New York, however. Considering

the relation between both fora and the subject matter of this lawsuit, this factor is neutral.

The fourth private interest is the convenience of the parties as indicated by their relative physical and financial conditions. Gilberg contends that he would suffer "personal, professional and economic hardship" if forced to litigate in Pennsylvania. (Def.'s Mem. ¶ 11.) Nevertheless, it is Gilberg's burden to demonstrate that. Gilberg states that at least one of Thrivest's officers has a residence in New York City, suggesting it would not be inconvenient for Thrivest to litigate the case there. (Gilberg Aff. ¶ 12.) Given that Gilberg has not met the burden of showing that he would suffer any hardship by litigating in Philadelphia, this factor is at best neutral.

As to the fifth private interest—the convenience of the witnesses—Gilberg contends that "[m]any of the witnesses in this lawsuit are either domiciled in the State of New York or travel and/or live part time in the State of New York for the purpose of transacting business." (Gilberg Aff. ¶ 12.) He does not, however, provide any further information about these witnesses or their addresses to support his claims. To show inconvenience to witnesses, Gilberg must provide documentation of the names and addresses of witnesses he plans to call, the materiality of the matter to which they will testify and information about the costs of travel for those witnesses. *See Plum Tree, Inc. v. Stockment*, 488 F.2d 754, 757 n.2 (3d Cir. 1973); *Howell*, 1993 WL 387901, at *15 ("To show inconvenience to witnesses, the moving party needs to provide the type of documentation set forth in *Plum Tree*. . . . includ[ing] a list of the names and addresses of witnesses, whom the moving party plans to call, affidavits showing the materiality of

the matter to which these witnesses will testify and the costs of travel for the witnesses." (citing *Plum Tree*, 488 F.2d at 757 n.2)).

Gilberg has not done so. In any event, the convenience of witnesses is only to be considered "to the extent that the witnesses may *actually be unavailable for trial* in one of the fora," which Gilberg has similarly not demonstrated. *Jumara*, 55 F.3d at 879 (emphasis added). Finally, the roughly ninety-five miles separating Philadelphia and Manhattan is insufficient to demonstrate "significan[t] inconvenience to any of the parties or witnesses." *See Computs. Plus, Inc. v. AGS Enters., Inc.*, No. 89-1406, 1989 WL 37112, at *2 (E.D. Pa. Apr. 13, 1989); *see also Celgene Corp. Abrika Pharms., Inc.*, No. 06-5818 2007 WL 1456156, at *5 n.4 (D.N.J. May 17, 2007) (finding a 110-mile distance between venues insufficient for purposes of § 1404); *Goldstein v. RadioShack Corp.*, No. 06-0285, 2007 WL 1342533, at *3 (E.D. Tex. May 1, 2007) (finding a 133-mile trip for the defendants presents "little more than a minor inconvenience"); *Bay Cty. Democratic Party v. Land*, 340 F. Supp. 2d 802, 809 (E.D. Mich. 2004) (finding a 100-mile distance between current and proposed venues "negligible as a basis for a discretionary venue change"). In light of the relatively short distance between Philadelphia and New York, this private interest does not favor transfer.

The final private interest, "the location of documents[,] is entitled to little weight" due to "the advent of photocopying and the easy accessibility to copies." *Howell*, 1993 WL 387901, at *11. Neither party has briefed this issue, and given the relatively limited scope of this case and the short distance between the competing fora, it is difficult to imagine this factor having an appreciable effect on convenience. *See*

*also Jumara*, 55 F.3d at 879 (The location of records is only to be considered "to the extent that the files could not be produced in the alternative forum.").

Of the six private interest factors, none favor transferring this case.

**B.**

The Court must also consider public interest factors. These factors include: (1) the enforceability of the judgment; (2) practical considerations that could make the trial easy, expeditious, or inexpensive; (3) the relative administrative difficulty in the two fora resulting from court congestion; (4) the local interest in deciding controversies at home; (5) the public policies of the fora; and (6) the familiarity of the trial judge with the applicable state law in diversity cases. *Jumara*, 55 F.3d at 879–80 (citation omitted).

A judgment of this court is equally as enforceable as one rendered by a district court in the Southern District of New York. *See, e.g.*, *Sparkler v. Home Infusion Sols., LLC*, No. 13-3969, 2013 WL 6476501, at *6 (E.D. Pa. Dec. 9, 2013) ("[I]t is widely recognized that "unlike enforcing a judgment in a foreign country, . . . there is little significant difference in enforcing a judgment in one federal forum than in another." (citing *E'Cal Corp. v. Office Max, Inc.,* No. 01–cv–3281, 2001 WL 1167534, at *4 (E.D. Pa. Sept.7, 2001))).

To the extent that practical considerations exist "that could make the trial easy, expeditious, or inexpensive" in the Southern District of New York, they are not compelling. *See Jumara*, 55 F.3d at 879. For one, the distance between the two venues is relatively short, *see supra* Section V.A, and the burdens of geographic distance are minimized by contemporary technology, *see, e.g.*, *Howell*, 1993 WL 387901, at *11.

Further, the fact that Gilberg has not identified any reason particular witnesses will be unavailable—or even burdened—by litigating in the Eastern District of Pennsylvania minimizes the comparative expediency of litigating in the Southern District of New York. *cf. Ramsey v. Devereux Found.*, No. 16-0299, 2016 WL 3959075, at *6 (E.D. Pa. July 22, 2016) ("The [sixty-mile] distance [between two competing venues] for some witnesses is insufficient on its own to demand keeping the case in the Eastern District."); *Cf. also Morris Black & Sons v. Zitone Const. & Supply Co., Inc.*, No. 04-2608, 2004 WL 2223310, at *3 (E.D. Pa. Oct. 1, 2004) (holding that "[t]he relatively short distance between [the Eastern District of Pennsylvania] and the Southern District of New York weighs heavily against the transfer of this action" and collecting cases). Given the lack of practical considerations, this public interest does not favor transfer.

The relative administrative difficulty between the two potential fora resulting from court congestion does not favor transfer. As of the most recent statistics released in December 2016, the Eastern District of Pennsylvania had 370 civil case filings per judgeship, while the Southern District of New York had 374 per judgeship. ADMIN. OFFICE OF THE U.S. COURTS, FEDERAL COURT MANAGEMENT STATISTICS—PROFILES 11, 16 (Dec. 30, 2016). The difference in average time to disposition for civil cases in the two districts is more noteworthy: the time in the Southern District of New York is 9.1 months; in the Eastern District of Pennsylvania it is 5.5 months. *Id.* at 11, 16. The relative administrative difficulty caused by court congestion does not favor transfer.

The fourth public interest, the local interest in deciding local controversies at home, "involves a balancing of the original forum's interest in the litigation against that

of the alternative forum." *Jennings v. Boeing Co.*, 660 F. Supp. 796, 807 (E.D. Pa. 1987).

This factor is neutral, as each forum has an interest in the litigation: Thrivest resides

in the Eastern District of Pennsylvania, while Gilberg resides in the Southern District

of New York.  The dispute might be said to arise in either state, given that Thrivest

expected payment in Pennsylvania and Gilberg allegedly failed to make those payments

from New York.  New York's local interest in deciding this controversy is not so strong

as to override Thrivest's choice of forum.

The fifth public interest—the public policies of the fora—is neutral, and the

parties have not addressed the issue in their briefings.  The Court is unable to identify

any particular public policies from either state that militate in favor of a transfer of

venue.  *See, e.g.*, *Gordon v. Houghton Mifflin Harcourt Publ'g Co.*, No. 14-4703, 2015

WL 3871788, at *7 (E.D. Pa. June 23, 2015) ("[B]ecause this Court has not

independently identified any relevant public policy of either fora implicated by the

instant motion, this factor is neutral as to transfer.").

Finally, the Court's familiarity with the applicable state law disfavors transfer.

Each Agreement included a choice-of-law provision dictating the application of

Pennsylvania law.  *See* (Compl., at 15, 19, 23, 29, 36); *see also supra* Part III, at 7.

While a federal judge in New York could also apply Pennsylvania law to this dispute,

the Court's familiarity with Pennsylvania law—and the fact that venue is proper in the

Eastern District of Pennsylvania—does not favor transfer.

In sum, none of the private or public interests favor transferring this case to the

Southern District of New York.  Gilberg has not done enough to overcome Thrivest's

weighty interest in litigating this case in Pennsylvania and the motion to transfer is denied.

An appropriate Order follows.

BY THE COURT:

_**/s/ Gerald J. Pappert**_
GERALD J. PAPPERT, J.